UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARY D. BUCZEK,

Plaintiff,

-vs- 07-CV-58C(SC)

BRISTOL-MYERS SQUIBB COMPANY, BRISTOL-MYERS SQUIBB COMPANY RETIREMENT INCOME PLAN, PENSION COMMITTEE OF THE BRISTOL-MYERS SQUIBB COMPANY, and BRISTOL-MYERS SQUIBB COMPANY SEVERANCE PLAN,

Defendants.

---

APPEARANCES: MARK R. WALLING, ESQ., Williamsville, New York and HURWITZ & FINE, P.C. (EARL K. CANTWELL, ESQ., of Counsel), Buffalo, New York, Attorneys for Plaintiff.

BOND, SHOENECK & KING, PLLC (LOUIS ORBACH, ESQ., of Counsel), Syracuse, New York, Attorneys for Defendants.

**INTRODUCTION**

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). She seeks benefits under both the Bristol-Myers Squibb Retirement Income Plan ("Retirement Plan") and the Bristol-Myers Squibb Severance Plan ("Severance Plan"). Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted, and the complaint is dismissed.

## BACKGROUND and FACTS

According to the complaint, plaintiff commenced her employment at the Bristol-Myers Squibb ("BMS") Buffalo Technical Operations ("BTO") division April 2, 1990. Item 1, ¶ 10. In March 1999, plaintiff received a memorandum from Diane Lupp, BMS Human Resources Director, summarizing a discussion they had on March 10, 1999 regarding severance issues in the context of a possible sale of the BTO division. Item 1, Exh. A. Plaintiff was advised that she could "leave the company with severance on or after" July 16, 1999. Alternatively, she could "voluntarily give up [her] severance window" and defendant would "extend [her] termination date to no sooner than September 30, 1999." If the BTO division was sold and the new company offered plaintiff a position, she would not lose her right to severance should she decline the offer. However, plaintiff was advised that she would not be eligible for BMS severance if she accepted a position with the new company. *Id.* Plaintiff elected to voluntarily give up her severance window and continued working at BMS. *Id.*

In April 2005, BMS distributed a memorandum advising its employees about the ramifications of a sale and divestiture of the BTO division to Contract Pharmaceuticals Limited ("CPL"). Plaintiff was advised that BTO employees on short-term disability leave would not be transferred to CPL until they returned from leave, provided that their return was within six months of the date of divestiture. Item 1, ¶ 13. On August 16, 2005, plaintiff left work on a short-term disability leave for knee surgery. *Id.,* ¶ 14. On approximately August 26, 2005, BMS completed the sale of the BTO division to CPL. *Id.,* ¶ 16.

Plaintiff remained a BMS employee throughout her disability leave, and returned to work on October 24, 2005. Item 1, ¶ 17. Plaintiff then commenced employment with CPL. *Id.,* ¶ 15. On December 8, 2005, plaintiff requested enhanced retirement benefits through the BMS Retirement Plan. *Id.,* § 23. Section 3.2(e) of the Retirement Plan provides for enhanced retirement benefits if an employee is involuntarily terminated from employment, has completed ten years of regular full-time service with BMS, satisfies the "Rule of 70" as defined and calculated under the terms of the BMS Severance Plan, and executes a general release. Item 3, Exh. B. The "Rule of 70" combines an employee's age with years of service. It is undisputed that plaintiff's age and years of service satisfied the "Rule of 70" as of September 10, 2005. Item 1, ¶ 20. Her request for "Rule of 70" benefits was denied on January 6, 2006 and, after an appeal of the denial, on May 18, 2006. *Id.,* ¶¶ 24-26.

In denying plaintiff's claim for "Rule of 70" benefits, defendants stated that plaintiff was not eligible for benefits because she was not involuntarily terminated from BMS, but instead was transitioned to CPL. Item 10, Exh. C, p. 4. BMS made "Rule of 70" benefits available to those employees who met the age and service requirements as of the date of divestiture, August 26, 2005. *Id.,* p. 5. However, plaintiff did not meet those requirements until September 10, 2005. Additionally, BMS explained in the April 15, 2005 memorandum that "employees who will become employees of CPL do not meet the first criteria [involuntary termination] since they have the opportunity for employment with CPL." Item 10, Exh. C., p. 15.

Plaintiff commenced this action on February 1, 2007. She has asserted two causes of action: first, for enhanced retirement benefits under the BMS "Rule of 70" and second,

for severance benefits "pursuant to and in accordance with the Lupp Memorandum" of March 1999. Item 1, ¶ 34. She also seeks costs and attorney's fees.

Defendants filed their answer to the complaint and a motion for judgment on the pleadings on March 15, 2007. Items 2, 3. Plaintiff filed a response to the motion on April 20, 2007. Items 9, 10. Defendants filed a reply on May 11, 2007. Item 11. The court has determined that oral argument is unnecessary.

## DISCUSSION

It is well settled that a challenge to a denial of benefits under ERISA should be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If such discretion is given, a district court must review the administrator's denial of benefits deferentially, and may reverse only if the administrator's decision was arbitrary and capricious. *Id.* at 104. An exception to the arbitrary and capricious standard of review applies when a plaintiff demonstrates that (1) the administrator operated under a conflict of interest and (2) the conflict actually "affected the reasonableness" of the administrator's decision. *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1255 (2d Cir. 1996) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995)); *see also Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000) ("In order to trigger *de novo* review of an administrator's decision when the plan itself grants discretion to the administrator, a plaintiff must show that the administrator was in fact influenced by the conflict of interest.") (internal quotation marks omitted). The burden of proof on these two

requirements falls to the plaintiff. *See Pulvers,* 210 F.3d at 92. “If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan *de novo*.” *Sullivan,* 82 F.3d at 1256. If the plaintiff cannot carry this burden, any conflict the administrator has is simply one more factor to be considered in determining whether the challenged decision was arbitrary and capricious. *Pulvers,* 210 F.3d at 92.

Here, plaintiff concedes that “the Retirement Plan and Severance Plan purport to grant ‘discretionary authority’” to their administrators. Item 9, p. 16. Both plans provide that the plan administrators have “discretionary authority” to grant or deny claims, interpret and construe the provisions of the plans, and resolve ambiguities, inconsistencies, and omissions therein. Item 3, Exh. B, § 11.2; Exh. C, Part 1, § IX(e). Plaintiff, however, argues that despite the clear language in the plans, defendants operate under an inherent conflict of interest that warrants a less deferential standard of review. Item 9, p. 16. Plaintiff has made no showing of an actual conflict of interest other than to state that the plan is funded solely through corporate income and the decision-makers are employees of the company. The Second Circuit has repeatedly held that the fact that the defendant served as both plan administrator and plan insurer, although a factor to be weighed in determining whether there has been an abuse of discretion, is alone insufficient as a matter of law to trigger stricter review. *Pulvers,* 210 F.3d at 92 (internal quotations omitted); *see also Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1274 (2d Cir. 1995) (“the simple fact that the administrator of a plan . . . happens to be an ‘arm of the employer’ does not in itself create a conflict of interest.”). Therefore, plaintiff's

allegation that defendants operated under a conflict of interest solely because of their financial interest does not justify application of a *de novo* standard of review. Plaintiff has made no additional allegations of conflict of interest and has not shown that any alleged conflict actually influenced the administrator of the plans. Accordingly, the defendants' decision is subject to review under the arbitrary and capricious standard.

Under the arbitrary and capricious standard of review, the court may overturn a decision to deny benefits only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir.1999) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d at 442). This scope of review is narrow, and the court is not permitted to substitute its own judgment for that of the decision maker. *Pagan*, 52 F.3d at 442. When applying the arbitrary and capricious standard to review a denial of benefits under ERISA, a reviewing court may generally not look beyond the administrative record. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). The rationale is that Congress did not intend that federal district courts would function as substitute plan administrators. *Id.* Thus, discovery is typically limited in ERISA cases to promote the goal of speedy and inexpensive litigation. *See Lane v. The Hartford*, 2006 WL 3292463, at *2 (S.D.N.Y. November 14, 2006); *Samedy v. First Unum Life Ins. Co. of America*, 2006 WL 624889, at *2 (E.D.N.Y. March 10, 2006). In this case, it appears that plaintiff has been provided all plan documents upon which the determination was based and summary plan descriptions and memoranda upon which she relied in challenging the denial. She has failed to show good cause for further discovery beyond the administrative record.

Plaintiff advances several arguments in opposition to the motion to dismiss. First, she states that the summary plan description she received conflicts with the plan documents. Second, she states that she was involuntarily terminated from BMS, despite her continued employment with CPL, and thus is entitled to severance benefits under both the Severance Plan and the "Lupp Memorandum" of March 1999. Plaintiff also argues that denial of her "Rule of 70" benefits is plainly wrong based upon the language of section 3.2(e) of the Retirement Plan. Finally, plaintiff argues that defendants' interpretation of the plans is irrational. These contentions will be addressed in order.

First, in reliance on a page from the summary plan description ("SPD") for the Retirement Plan, effective January 2005, plaintiff states that she is eligible for enhanced pension benefits. She argues that, as the SPD and the plan documents conflict, the SPD should control. The relevant section of the SPD provides as follows:

> If your employment is involuntarily terminated and [1] You are under age 55 (*i.e.*, not yet eligible for early retirement); [2] Your age plus years of service (as defined in the Severance Plan section of *Your Benefits* booklet) equals or exceeds 70 ("Rule of 70"); [3] You have at least 10 years of service; and [4] You sign the General Release under the Severance Plan; you may be eligible for an enhanced pension benefit . . . .

Item 10, Exh. A. Article 3 of the BMS Retirement Plan, section 3.2 is entitled "Early Retirement Date." Subsection 3.2(e) was amended effective February 1, 2003 to provide that:

> [A] Member who: (i) has completed at least ten Years of Service; (ii) was a Regular Full-time Employee of the Company who experienced an involuntary Termination of Employment; (iii) had satisfied the "Rule of 70" as defined and calculated under the terms of the Bristol-Myers Squibb Company Severance Plan; and (iv) has executed a general release may commence Retirement Income . . . .

Item 3, Exh. B. Here, the SPD does not conflict with the Retirement Plan provisions. Both the SPD and the Retirement Plan provide that the employee must be involuntarily terminated, have completed ten years of service, satisfy the "Rule of 70" provisions as set forth in the Severance Plan, and sign the General Release as provided in the Severance Plan. Thus, both the SPD and the Retirement Plan contemplate the receipt of severance as a prerequisite to "Rule of 70" benefits. There is nothing in the SPD language alone that would entitle plaintiff to "Rule of 70" benefits.

Plaintiff also argues that she was "involuntarily terminated" despite her continued employment with CPL and is thus entitled to severance benefits. The BMS Severance Plan provides that "[n]o severance will be payable to employees: . . . (ii) whose service with the Company is terminated for any of the following reasons: . . . (f) [t]he sale of all or part of the Company's business assets if an employee is offered employment by the acquirer of such assets." Item 3, Exh. C, Part 1, § II. Thus, it is apparent that "involuntary termination," for purposes of the Severance Plan, does not include those situations in which an employee accepts an offer of continued employment with a company that acquires the business assets of BMS. Under the plain language of the Severance Plan, the decision to deny plaintiff severance benefits was not unreasonable, as she was offered and continued her employment with CPL.

Additionally, the Lupp Memorandum is not a plan document and does not purport to amend the terms of the BMS Severance Plan. Congress intended that the plan documents and SPDs "exclusively govern an employer's obligations under ERISA plans." *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir. 1988). In any event, plaintiff's reliance on the Lupp Memorandum for a right to severance is misplaced, as that

document pertains to plaintiff's severance rights in relation to a sale of assets in 1999, not the CPL acquisition in 2005. Even if the Lupp Memorandum could be read to apply to the CPL acquisition in 2005 and plaintiff's reliance thereon were proper, the Lupp Memorandum also provides that plaintiff would not be eligible for severance if she accepted a position with the company that was to acquire the assets, as she did with CPL in 2005. Accordingly, the decision to deny severance benefits was not unreasonable.

Plaintiff also argues that she is entitled to "Rule of 70" enhanced benefits based on the language of the Retirement Plan. The defendants' decision to deny plaintiff benefits appears to have turned on the defendants' definition of "involuntary termination" and the linkage between the "Rule of 70" benefits and the Severance Plan. In the April 2005 Memorandum, BMS employees were advised that continued employment with CPL following the divestiture would render them ineligible for "Rule of 70" benefits, as they would not be considered to have been involuntarily terminated.[1] Defendants also state that plaintiff must have been involuntarily terminated "with severance" in order to be eligible for "Rule of 70" benefits. Thus, they argue, as plaintiff was offered and accepted a position with CPL she was ineligible for severance and did not satisfy the "Rule of 70" criteria "as defined and calculated" under the Severance Plan. Plaintiff states that such an interpretation adds a requirement not specifically enumerated in the Retirement Plan or the SPD.

---

[1] "Involuntary Termination" is not specifically defined in the Retirement Plan or the SPD. "Termination of Employment" is defined in the Retirement Plan as the "severance of employment with the Company, except by reason of temporary absence or disability leave . . ., death, retirement or transfer to other employment as provided in Article 8." Item 3, Exh. A., Part 1, § 1.26. Article 8 pertains to transfer of employment to a "subsidiary, affiliate, division or branch of the Company . . . ." *Id.*, Part 3.

It is clear from the Severance Plan that "[n]o severance will be payable to employees . . . whose service is terminated for . . . [t]he sale of all or part of the Company's business assets if an employee is offered employment by the acquirer of such assets." Item 3, Exh. C, Part 1, § II. Thus, it is equally clear that plaintiff was not eligible for any severance. "Rule of 70" benefits are available to those employees who leave the company involuntarily but are not yet eligible for early retirement. The "Rule of 70" provision of the Severance Plan, like all other provisions ("Amount of Severance Pay," "General Release," "Payment Method," "Employee Benefits," and "Rehired After Termination"), clearly contemplates eligibility for basic and supplemental severance as a prerequisite to its applicability. Section VII of the Severance Plan provides that "[i]f an employee is eligible under these 'Rule of 70' provisions, an *additional* payment will also be made." (Emphasis added.) "Rule of 70" benefits cannot be conferred without the payment of severance; they are an extension of an employee's severance benefits intended to "help offset the difference between the individual's actual Retirement Income Plan benefit as a vested terminated employee versus what this benefit would have been as an early retiree." Item 3, Exh. C, Part 1, Section VII. Thus, as plaintiff was not eligible for severance, she could not satisfy the "Rule of 70" requirements "as defined and calculated" under the Severance Plan and was not eligible for such benefits as a form of "early retirement" under the Retirement Plan.

Even if the court were to consider plaintiff's interpretation of the plan language reasonable, under the arbitrary and capricious standard, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." *Pulvers,*

210 F.3d at 92-93 (citation and internal quotation marks omitted); *see also Tocker v. Philip Morris Cos.*, 470 F.3d 481, 489 (2d Cir. 2006) ("Where the plan participant and the plan administrator offer two competing yet reasonable interpretations of [the plan], then [we] must accept that offered by the administrators.")(citation and internal quotation marks omitted). The court finds that the determination to deny plaintiff severance and "Rule of 70" benefits was reasonable, not erroneous as a matter of law, and based on substantial evidence.

The test for evaluating a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000). Dismissal is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (quotation omitted). Here, plaintiff has presented no set of facts in support of her claim which would entitle her to benefits under the BMS Severance Plan, the Retirement Plan, or the Lupp Memorandum.

## CONCLUSION

The defendants' motion for judgment on the pleadings is granted, and the complaint is dismissed.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: May 2, 2008
p:\opinions\07-58.april3008